Daniel F. Fears, State Bar No. 110573
dff@paynefears.com
Andrew K. Haeffele, State Bar No. 258992
akh@paynefears.com
Megan A. Mackie, State Bar No. 325004
mam@paynefears.com
PAYNE & FEARS LLP
4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212

Attorneys for Walmart Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

RUBEN MATUTE,

      Plaintiff,

      v.

WALMART INC., a Delaware corporation; ANA S. GUERRA, an individual; LANORIA ISAAC, an individual; and DOES 1 through 50, inclusive,

      Defendant.

Case No.  2:22-cv-7314
[Los Angeles County Superior Court Case No. 22STCV28280]

**PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 AND 1441**

Action Filed: August 30, 2022

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF, AND HIS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant Walmart Inc. ("Defendant") hereby removes this action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California, on the following grounds:

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 AND 1441

## I.    INTRODUCTION

1.    This Court has jurisdiction over this action because complete diversity exists between Plaintiff Ruben Matute ("Plaintiff") and Defendant Walmart Inc. ("Walmart" or "Defendant").

2.    Plaintiff is a citizen of the State of California, and was a California citizen at the time of the filing of the Complaint.

3.    Walmart is now, and was at the time this action was filed, a citizen of the State of Arkansas and a citizen of the State of Delaware within the meaning of 28 U.S.C. section 1332. At all material times, Walmart was a corporation organized under the laws of the State of Delaware, and at all material times Walmart has maintained its principal place of business, including its corporate headquarters, in the State of Arkansas.

4.    Ana S. Guerra is a sham defendant, fraudulently joined for the purpose of avoiding federal jurisdiction.

5.    Lanoria Isaac is a sham defendant, fraudulently joined for the purpose of avoiding federal jurisdiction.

6.    Plaintiff's Complaint, on its face, contemplates an amount in controversy that exceeds the sum or value of $75,000, exclusive of interest and costs.

7.    Pursuant to 28 U.S.C. section 1446(b)(1), this case is being removed within thirty (30) days of service of the Complaint upon Walmart.

## II.    THE STATE COURT ACTION

8.    On or about August 30, 2022, Plaintiff filed an action against Walmart titled "Ruben Matute v. Walmart Inc., Ana S. Guerra and Lanoria Isaac and DOES 1 TO 50, inclusive" (the "State Court Action"). Walmart was served with copies of the Summons and Complaint on September 6, 2022. Attached hereto as **Exhibit A** are true and correct copies of the Summons, Complaint, and Proof of Service.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-2-
PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 AND 1441

9.     On October 6, 2022, Walmart filed an Answer to the Complaint. A true and correct copy of Walmart's Answer is attached hereto as **Exhibit B**. Walmart obtained copies from the state court's website of the Notice of Case Management Conference and Order to Show Cause Hearing on September 13, 2022. True and correct copies of these documents are attached hereto as **Exhibit C.**

10.     The Summons, Complaint, Notice of Case Management Conference, Notice of Order to Show Cause Hearing, and Answer constitute the pleadings, process, and orders served upon or by Walmart in the State Court Action.

## III.     COMPLETE DIVERSITY EXISTS BETWEEN PLAINTIFF AND WALMART

11.     The Complaint, and each alleged cause of action asserted therein, may be properly removed on the basis of diversity jurisdiction, in that this is a civil action between citizens of different states. Plaintiff's claims against Walmart contemplate an amount in controversy that exceeds the sum of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332.

12.     Plaintiff is now, and was at the time this action was filed, a citizen of the State of California within the meaning of U.S.C. § 1332(a) -- his place of residence is in the County of Los Angeles, in the State of California. (*See* Ex. A, Complaint, ¶ 8.)

13.     If a party is a corporation, it is a citizen of both its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).

14.     Walmart is now, and was at all material times, a corporation organized under the laws of the State of Delaware. (Declaration of Megan A. Mackie ("Mackie decl.") at ¶ 2, Exh. A.) Walmart is therefore a citizen of the State of Delaware.

15.     Walmart is now, and was at all material times, headquartered in Bentonville, Arkansas. (*Id*.) Walmart's officers and directors are employees whose offices are located at its headquarters in Bentonville, Arkansas. Walmart's high-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

level officers direct, control, and coordinate the corporation's activities from Walmart's headquarters in Bentonville, Arkansas. And Walmart performs the vast majority of its executive and administrative functions at its headquarters in Bentonville, Arkansas. Walmart is therefore a citizen of the State of Arkansas, because its principal place of business is in Bentonville, Arkansas. 28 U.S.C. §1332(c); *Hertz Corp.*, 130 S. Ct. at 1192 ("[W]e conclude that the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities").

16.     Therefore, for the purpose of determining jurisdiction, Walmart was not (and is not) a citizen of the State of California, but rather, it was (and is) a citizen of the States of Delaware and Arkansas.

17.     "Doe" Defendants fictitiously named, but not served, are not joined in this Petition and Notice of Removal, and shall be disregarded for the purpose of determining removal jurisdiction. 28 U.S.C. § 1441(b)(1). In determining whether diversity of citizenship exists, only the named defendants are considered. *Newcombe v. Adolf Coors Co.* 157 F. 3d 686, 690-691 (9th Cir. 1998).

18.     Accordingly, complete diversity exists between Plaintiff and Walmart.

**IV.     NAMING GUERRA AND ISAAC AS DEFENDANTS DOES NOT DESTROY DIVERSITY BECAUSE IT IS OBVIOUS THAT BOTH WERE JOINED FOR THE PURPOSE OF AVOIDING FEDERAL JURISDICTION**

19.     The fact that Plaintiff named Guerra and Isaac as defendants does not defeat removal based on diversity grounds because both were fraudulently joined for the purpose of defeating federal diversity jurisdiction. *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002) ("If a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the well-settled rules of the state, the joinder is fraudulent and the defendant's presence in the lawsuit is ignored for purposes of determining diversity."); *Charlin v. Allstate*

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

*Ins. Co.*, 19 F.Supp.2d 1137, 1140 (C.D. Cal. 1998) *citing Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983) ("A joinder is fraudulent if there is no intention to get a joint judgment, and there is no colorable ground for so claiming.")

20.    A defendant's right of removal cannot be defeated by the fraudulent joinder of a non-diverse defendant. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998) ("[i]t is commonplace that fraudulently joined defendants will not defeat removal on diversity grounds").

21.    Although a defendant bears the burden of establishing a fraudulent joinder, the assessment must be based largely on the allegations of the plaintiff's complaint. *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 549 (9th Cir. 2018) ("And while the party seeking removal is entitled to present additional facts that demonstrate that a defendant has been fraudulently joined, *Ritchey*, 139 F.3d at 1318, in many cases, the complaint will be the most helpful guide in determining whether a defendant has been fraudulently joined."); *Kelley v. Caliber Home Loans, Inc.*, 2018 WL 2064633, at *3 (E.D. Cal., 2018); *Toth v. Guardian Industries Corp*. 2012 WL 468244, at *5 (E.D. Cal., 2012) ("[While] district courts within the Ninth Circuit have suggested that if a plaintiff can amend, remand should be granted[,] the weight of authority holds that review of the complaint, even in fraudulent joinder cases, is constrained to the facts actually alleged therein.").

## V.    AS A MATTER OF LAW, PLAINTIFF CANNOT POSSIBLY RECOVER AGAINST GUERRA OR ISAAC AND HE HAS NO INTENTION OF DOING SO

22.    In the Ninth Circuit, a non-diverse defendant is deemed a sham, and will not defeat jurisdiction, "if a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the well-settled rules of the state." *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002); *see also Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir.

2001); *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Fraudulent joinder exists if the removing party shows there is "no possibility that plaintiff will be able to establish a cause of action in State Court against the alleged sham defendant." *Cofer v. Parker-Hannifin Corp.,* 194 F. Supp. 3d 1014, 1022 (C.D. Cal. 2016).

23.    In his Complaint, Plaintiff alleges eight causes of action: (1) Discrimination Based Upon Disability (Gov. Code § 12940, *et seq*.); (2) Failure to Accommodate (Gov. Code § 12940(k)); (3) Failure to Engage in the Interactive Process (Gov. Code § 12926.1(e)); (4) Retaliation (Gov. Code § 12940, *et seq*.); (5) Failure to Take All Reasonable Steps to Prevent Discrimination, Harassment, and Retaliation (Gov. Code § 12940, *et seq*.); (6) Intentional Infliction of Emotional Distress; (7) Violation of Rest Period Law (Industrial Welfare Commission Wage Orders and Labor Code § 226.7); and (8) Failure to Provide Accurate Wage Statements (Labor Code § 226).

24.    Of these causes of action, only the last three intentional infliction of emotional distress ("IIED"), violation of rest period law, and failure to provide accurate wage statements are pled against fraudulently joined Defendants Guerra and Isaac. For several reasons, there is simply no possibility that Plaintiff will be able to establish these causes of action against the individual defendants.

25.    In his complaint, Plaintiff alleges just two allegations against the individual defendants, at paragrahs 26 and 27:

> Defendant's managers, including ISAAC and GUERRA, insisted that Plaintiff continue to perform work that was not within his medical restrictions.

> Guerra told Plaintiff that he was no longer qualified to be in the M3 program because he was injured.

(Complaint, ¶¶ 26 and 27.)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 AND 1441

26.    These allegations are simply insufficient to support Plaintiff's IIED and Labor Code claims against either Individual Defendant. There is no possibilty Plaintiff will be able to establish these theories in state court.

**A.    Plaintiff Cannot State a Claim of IIED Against Guerra and/or Isaac**

27.    To establish his IIED claim against Guerra and/or Isaac, Plaintiff must provide evidence of the following: (1) that Guerra and Isaac engaged in outrageous conduct with the intent to cause, or with reckless disregard of the probability of causing, emotional distress; and (2) that Plaintiff suffered severe or extreme distress as an actual and proximate cause of Guerra and Isaac's conduct. *McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1272 (E.D. Cal. 2012). For several reasons, no such possibility exits.

28.    ***First***, Plaintiff's IIED claim – seemingly based entirely on an allegation that managers of Walmart insisted he work beyond medical restrictions – falls squarely within the ambit and complete bar of California's Workers' Compensation Act ("WCA") set forth in Cal. Labor Code §§ 3600 *et seq*. (Complaint, ¶ 23.) This is well-settled California legal precedent:

- *See Miklosy v. Regents of the University of California*, 44 Cal. 4th 876, n.8 (2008) ("A supervisor, when taking action against the employee, is necessarily exercising authority the employer conferred on the supervisor, and it is only that authority that makes the supervisor's action injurious, not the action in itself. Thus, in a retaliation case, it is the employer's adverse employment action that constitutes the substance of the tort, and the supervisor's action merges with that of the employer.").

- *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 820–21 (2001) ("Courts consider only the acts themselves—and not the motive behind the acts. In the exclusivity context, motive refers to the purpose or reason behind the acts and not the intentional or negligent nature of these acts. Thus, courts

PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 AND 1441

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

should disregard any alleged intent beyond the intent to do the acts that establish the elements of the cause of action when determining whether these acts [fall] within the compensation bargain. Such a focus is necessary in order to preserve the compensation bargain. Indeed, permitting civil claims based on conduct that appeared on its face to be a normal part of the employment relationship merely because the mental state rendered the conduct intentionally or knowingly tortious undermines the premise behind the workers' compensation system.").

- *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161 (2014) ("Physical and emotional injuries sustained in the course of employment are preempted by the workers' compensation scheme and generally will not support an independent cause of action [for IIED]. Emotional injuries caused by workplace discipline, including termination, fall within this rule.").

- *Arkens v. Cty. of Sutter*, 2016 WL 4001057, at *8 (E.D. Cal. 2016) ("Although plaintiff alleges some of the defendants acted intentionally and for a wrongful purpose, including discriminating against him . . . an employee cannot avoid [WCA exclusivity] by characterizing the employer's decisions as manifestly unfair, outrageous or intended to cause emotional disturbance. The critical issue is whether the alleged acts, bereft of their motivation, can ever be viewed as a normal aspect of the employer relationship. Accordingly, because plaintiff's exclusive remedy for the emotional distress he allegedly suffered from defendants' conduct lies under the WCA, the court must grant defendants' motion to dismiss plaintiff's intentional infliction of emotional distress claim with prejudice.").

- *Jones v. Dep't of Corr. & Rehab.*, 152 Cal. App. 4th 1367, 1382 (2007) ("Jones opposed summary judgment on his [IIED claim] by contending, "the legislature did not intend that an employer be allowed to raise the exclusivity rule for the purpose of deflecting a claim of discriminatory practices. Because we conclude Jones did not establish discrimination her causes of action for emotional distress fail to the extent they are tethered to the discrimination claim. Further,

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

independent basis for disposing of these causes of action for emotional distress is that they are barred by the exclusivity rule of workers' compensation. Even if the discriminatory conduct Jones complained about may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions.").

- *Thibeaux v. GEO Grp., Inc.*, 2014 WL 6693782, at *3 (S.D. Cal. 2014) ("Upon analysis of relevant California law, Plaintiff's IIED claim is barred by the exclusivity provisions of worker's compensation. Plaintiff's claims involve his termination, which is a normal and inherent part of employment . . . The termination does not appear to involve the employer stepping out of the proper role, or conduct with a questionable relationship to employment. Plaintiff simply asserts that his claim is not barred because it "arises from Defendant's discriminatory practices. [But], Plaintiff cannot remove his claim from the exclusive remedy of worker's compensation merely by alleging that the conduct was [discriminatory]. The exception for contravening public policy does not apply to preserve his IIED claims, even though Plaintiff has alleged unlawful discrimination.").

29. ***Second***, even if Plaintiff's IIED claim was not pre-empted, Plaintiff cannot possibly establish that Guerra and/or Isaac engaged in extreme and outrageous conduct. A single instance in which Guerra or Isaac "insisted that Plaintiff continue to perform work not within his medical restrictions" does not come close to the "extreme and outrageous" conduct required to give rise to liability for IIED. Instead, Plaintiff mistakenly relies on a separate and distinguishable claim under FEHA to prop up his IIED claim. Here, an alleged failure to accommodate Plaintiff is a separate actionable claim under FEHA, which Plaintiff has already asserted in his Complaint, and does not constitute a separate basis for IIED. (*See Gardner v. City of Berkeley* (N.D. Cal. 2012) 838 F.Supp.2d 910, 926.)

30. Similarly, Guerra informing Plaintiff that he was no longer qualified for a mentorship program is a personnel management action that cannot support an

PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 AND 1441

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

IIED claim. *See Janken v. GM Hughes Elecs.*, 46 Cal.App.4th 55, 80 (1996) ("Managing personnel is not outrageous conduct... A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged...")

**B.    Plaintiff Cannot State a Claim for the Violation Labor Code Sections 226.7 or 226(a) Against Guerra and Isaac.**

31.    To hold employees Guerra and/or Isaac <u>personally</u> liable for Labor Code violations under Labor Code section 226.7 and 226(a), Plaintiff must establish the following: (1) that Guerra and Isaac are "owners, directors, officers, or managing agents" of Walmart, and (2) that Guerra and Isaac "violate[d], or cause[d] to be violated" Labor Code sections 226.7 and 226(a). Cal. Lab. Code § 558.1 (a). *See*, *Usher v. White*, 64 Cal. App. 5th 883, 896 (2021), *reh'g denied* (June 10, 2021) (liability is imposed on a employee "if, when acting on behalf of an employer, the [employee] has personal involvement in the enumerated violations in section 558.1; or, absent personal involvement, has sufficient participation in the activities of the employer – including, for example, over those responsible for the alleged wage and hour violations – such that the [employee] may be deemed to have contributed to, and thus to have caused such violations" (quotations omitted)); *Espinoza v. Hepta Run, Inc.*, 74 Cal. App. 5th 44, 58-60 (2022), *review denied* (Apr. 27, 2022) ("in order to cause a violation of the Labor Code, an individual must have engaged in some affirmative action beyond his or her status as an owner, officer or director of the corporation. […] [T]o be held personally liable he or she must have had some oversight of the company's operations or some influence on corporate policy that resulted in Labor Code violations").

32.    Here, Guerra and Isaac are not "owners, directors, [or] officers," of the publicly traded, international company, Walmart. Cal. Lab. Code § 558.1. Guerra is a Store Lead of one of Walmart's 10,500 stores (one level below Store Manager) and Isaac is a Coach (one level below a Store Lead). (Declaration of Ana Guerra

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 AND 1441

("Guerra Decl.") ¶ 1; Declaration of Lanoria Isaac ("Isaac Decl.") ¶ 1); Request for Judicial Notice ("RJN") ¶ 1.)

33.      Additionally, because a "managing agent" in the context of Labor Code section 558.1 must "exercise substantital independent authority such that their decisions ultimately determine corporate policy," neither Guerra nor Isaac fit within this definition. *Barajas v. Blue Diamond Growers Inc.*, No. 1:20-CV-0679 JLT SKO, 2022 WL 1103841, at \*3 (E.D. Cal. Apr. 13, 2022). Guerra and Lanoria do not have the authority to establish, influence, or change Walmart's corporate policies. (Guerra Decl. ¶ 6; Isaac Decl. ¶ 6.) They simply implement the policies that have been established by upper management at Walmart. (*Id*.) They have never had independent discretion to make decisions that fall outside of Walmart's policies, procedures, and strategic initiatives. (*Id*.) Indeed, several courts have determined that individuals holding the Store Manager position **at Walmart**, and even a level above Store Manager, are not managing agents. *See, e.g., Hsiao v. Walmart Assocs., Inc.*, 2018 WL 6136155, at \*11 n.18); *Garcia v. Wal-Mart Assocs., Inc.*, No. CV 1907784 CJC SKX, 2020 WL 8455110, at \*1 (C.D. Cal. Dec. 21, 2020); *Raygoza v. Walmart Inc.*, No. CV 21-809-GW-KSx (C.D. Cal. Dec. 21, 2020) (attached to RJN ¶ 2, Ex. A.)

34.      But even if Plaintiff *could* satisfy his first burden, he would nevertheless fail to carry his second. Plaintiff does not allege that either Guerra or Isaac "violate[d], or cause[d] to be violated" *any* Labor Code provision, let alone Labor Code sections 226.7 or 226(a). Cal. Lab. Code § 558.1. In fact, Plaintiff does not allege a single action on the part of Guerra or Isaac related to the violation of Labor Code sections 226.7 or 226(a). (*See* Complaint ¶¶ 9-33, 95-106.) And, Guerra and Isaac declared under penalty of perjury that neither prevented Plaintiff from taking rest breaks and neither were either involved in the payroll processes at Walmart that issue associates wage statements. (Guerra Decl., ¶¶ 2-5; Isaac Decl., ¶¶ 4-5.) Thus, Plaintiff cannot possibly prove individual liability for Guerra or Isaac

PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 AND 1441

under Labor Code section 558.1. *See Usher v. White*, 64 Cal. App. 5th 883, 898 (2021) (finding that personal involvement in the wage and hour violations or sufficient participation in the operation of the employer is required to find an employee personally liable under Labor Code section 558.1).

35. Based on the forgoing, Plaintiff has no possibility of maintaining his IIED or Labor Code violation claims against Guerra and Isaac. Accordingly, Guerra and Isaac are sham defendants and must be ignored for purposes of assession diversity jurisdiction. *See Duran v. DHL Express (USA)*, Inc., No. CV 15-09965-BRO (EX), 2016 WL 742864, at *6 (C.D. Cal. Feb. 24, 2016) (finding sham defendant on similar allegations in support of IIED claims); *Nguyen v. Ericsson, Inc.*, No. 5:17-CV-06453-EJD, 2018 WL 2836076, at *3 (N.D. Cal. June 11, 2018) (denying Plaintiff's motion to remand because the employee in questions could not be found to be a "managing agent" per Labor Code section 558.1).

## VI.  THE AMOUNT IN CONTROVERSY EXCEEDS THE $75,000 JURISDICTIONAL MINIMUM

34. The jurisdictional minimum amount that must be in controversy was satisfied at the time of the filing of this action, and is still satisfied by the facts set forth herein and described more specifically below. 28 U.S.C. § 1332(a) ("[D]istrict courts … have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between … citizens of different States."); *see also Matheson v. Progressive Specialty Ins., Co*., 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000").

35. Walmart discusses below the allegations in the Complaint solely to demonstrate that the amount in controversy exceeds $75,000. Walmart denies that Plaintiff is entitled to any damages and that Plaintiff will be able to recover on any of his theories of recovery.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

36. In assessing the amount in controversy, this Court may, for removal purposes, look to the removal papers and the pleadings, as well as summary judgement type evidence. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *Singer v. State Farm Mutual Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

37. In measuring the amount in controversy for purposes of diversity jurisdiction, "a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (quotations omitted, emphasis added). In addition, the Court should aggregate damages in determining whether the controversy exceeds $75,000. *See Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972) ("aggregation is permitted when a single plaintiff seeks to aggregate two or more of her own claims against a single defendant") (internal quotations omitted).

38. Additionally, as the Ninth Circuit explained in Chavez, "the amount in controversy is not limited to damages incurred prior to removal--for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal)[; but] rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez*, 888 F.3d at 414-15.

39. Here, Plaintiff seeks to recover (1) medical expenses; (2) actual, consequential, and incidental losses; (3) general damages; (4) exemplary and punitive damages; (5) penalties for Labor Code violations; (6) attorneys' fees; and (7) costs of suit. (Complaint, Prayer for Relief).

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-13-

**A.      Economic Damages**

40.      Plaintiff seeks economic damages associated with an hourly rate shortfall caused by an alleged failure to promote. (*See* Complaint ¶¶ 27-29 and Prayer for Relief ¶ 1, 2.) At the time in question, Plaintiff's hourly rate was $16.00. (Complaint ¶ 11.) However, he *claims* Walmart should have promoted him to a management role, a promotion that he alleges would have raised his hourly rate by $4.00. (*Id*. ¶ ¶ 27-29.)

41.      As a full-time employee, Plaintiff worked a minimum of 35 hours a week. (*Id*. ¶ 11; Isaac Decl. ¶ 3.) Thus, Plaintiff earns a minimum of approximately $560 per week.[1]

42.      By the time this case is statistically likely to be resolved at trial (September 2024, or 23.5 months from the date of filing),[2] Plaintiff's lost wages will be approximately **$15,000.**[3]

**B.      Penalties**

43.      Additionally, Plaintiff seeks Labor Code penalties associated with his rest breaks and wage statement claims. (Complaint ¶¶ 100, 101, 106).

44.       The complaint appears to allege a 100% violation rate as to rest breaks. (*Id*. ¶ 97.) Thus, Plaintiff would be entitled to one hour of pay for every missed rest break.[4] Plaintiff was hired on January 23, 2022 (Complaint ¶ 9) and is a current

---

[1] 35 hours multiplied by $16.00.

[2] Statistics maintained by the Administrative Office of the United States Courts pursuant to 28 U.S.C. § 604(a)(2) indicate that in the Central District of California, the median time from filing a civil action in federal court to trial is 23.5 months. (Declaration of Megan A. Mackie ("Mackie decl.") at ¶ 3, Exh. B.) Walmart requests that the Court take judicial notice of these facts pursuant to Federal Rule of Evidence 201.

[3] $140 in lost weekly wages based on difference in pay ($4 per hour times 35 hours) multiplied by 107 weeks between incidence date (August 26, 2022) and expected trial date (September 2024).

[4] An employer must pay an employee a premium of one-hours wages to compensate for a missed meal or rest period. *See Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012).

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 AND 1441

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

employee. Estimating a conservative three rest break eligible shifts per week, Plaintiff's penalties would equal at least $1,750.00.[5]

45.    Regarding wage statements, the complaint again appears to allege a 100% violation rate. (Complaint ¶ 103.) Thus, these penalties will likely equal $1,750.[6]

### C.    Non-Economic Damages

46.    Plaintiff asserts throughout his complaint that he is entitled to emotional distress damages "in a sum to be proven at trial." (*See* Complaint, ¶¶ 23, 30, 42, 52, 62, 73, 84, 88, 90, and 92.)

47.    Emotional distress damages alone, if proven, can be significant in employment cases involving alleged discrimination and harassment. *See, Velez v. Roche*, 335 F.Supp.2d 1022, 1038-40 (N.D. Cal. 2004) (surveying discrimination and harassment cases awarding emotional distress damages and concluding that "substantial jury awards of hundreds of thousands of dollars for non-economic damages have been upheld where there is evidence ... that the plaintiff suffered heightened mental anguish….").

48.    Indeed, courts have readily found that emotional distress damages in a single plaintiff employment case, alone, routinely exceed $75,000. *Stainbrook v. Target Corp.*, No. 2:16-CV-00090-ODW, 2016 WL 3248665, at *4 (C.D. Cal. June 8, 2016) (citing cases therein). Specific jury verdicts in employment cases in California indicate that awards well in excess of the jurisdictional requisite have

---

[5] 3 shifts times 36 weeks between hire date and today times $16.

[6] "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)..." Cal. Lab. Code § 226(e). Walmart issues wage statements every two weeks, for a total of 18 wage statements issued to Plaintiff thus far (there were 36 weeks between his hire date of January 23, 2022 and today). So, 1 times $50 plus 17 times $100 equals $1,750.

PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 AND 1441

been awarded to plaintiffs in cases with allegations (which Walmart denies) similar to *this* case. *See, e.g.*:

- *Snead v. Chino Valley Unified School District.*, 2015 WL 6776524 (Cal. Super. Ct.) (San Bernardino County Superior Court Case No. CIVRS 1101184; verdict date of July 30, 2015): $550,000. The plaintiff, a night custodian, suffered a back injury resulting in need for light duty assignment. After failing to properly accommodate the plaintiff after attempts at the interactive process, School District terminated the plaintiff. The jury found for the plaintiff, and awarded $330,000 in non-economic damages.

- *Estelle v. Los Angeles County Metropolitan Transp. Authority*, 2015 WL 5923355 (Cal. Super. Ct.) Los Angeles County Superior Court Case No. BC526217, verdict date of July 24, 2015): $625,000. The plaintiff was a bus driver. When a new series of buses was introduced that contained small compartments which caused pain to the plaintiff, he requested an accommodation. After largely being ignored, the plaintiff's job performance began to suffer and eventually led to an accident and the plaintiff's termination. The jury found for the plaintiff, and awarded all $625,000 in non-economic damages.

49. Given the similarities to Plaintiff's allegations (that he was discriminated against because of his purported disability), it is entirely conceivable that Plaintiff's emotional distress damages will far exceed the requisite $75,000 amount in controversy should Plaintiff be able to prove his allegations.

**D. Attorney's Fees**

50. Where an underlying statute authorizes an award of attorneys' fees, such potential fees may be included in calculating the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Here, Plaintiff seeks attorneys' fees for his FEHA claims (Complaint, Prayer for Relief), which are authorized for the prevailing party pursuant to California Government Code section 12965(b).

PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 AND 1441

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

51.     As the Ninth Circuit explained in *Chavez*, when determining the amount in controversy, attorneys' fees are calculated based on the *total* possible recovery, and not just fees incurred as of the time of removal. *Chavez, supra* 888 F.3d at 417 ("That the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy."); *Lucas v. Michael Kors (USA), Inc.*, No. 2018 WL 2146403, at *11 (C.D. Cal. 2018) ("The broad holding [in *Chavez*] strongly suggests that the Ninth Circuit would find it appropriate to consider post-removal attorneys' fees. Therefore, the Court agrees that unaccrued post-removal attorneys' fees can be factored into the amount in controversy."); *Bernstein v. BMW of N. Am., LLC*, 2018 WL 2210683, at *2 (N.D. Cal. 2018) ("The Ninth Circuit's recent decision in *Chavez* . . . holding that the amount in controversy is what is at stake in the litigation at the time of removal suggests that the attorneys' fees in the context of the amount in controversy requirement should be calculated based on the total possible recovery and not just the fees incurred to date—resolving a previously unresolved question.").

52.     Here, assuming that just an average amount of pre-trial discovery, trial preparation, and trial attendance occurs, a potential attorneys' fees award will likely exceed the $75,000 jurisdictional threshold regardless of any other claimed damages. Multiple courts have recognized that single-plaintiff suits such as this one easily generate over $100,000 in attorneys' fees. *See, e.g., Ponce v. Med. Eyeglass Ctr., Inc.,* No. 2:15-cv-04035-CAS (JEMx), 2015 WL 4554336, at *3 (C.D. Cal. July 27, 2015) (collecting cases); *Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2010 WL 1526441, at *4 (N.D. Cal. Apr. 15, 2010) (same).

53.     At a minimum, this case is likely to accrue at least $30,000 in attorneys' fees. Multiple courts have recognized that in single-plaintiff cases similar to this one, attorneys are likely to accrue at least $30,000 in attorneys' fees (100 hours of attorneys' time multiplied by a $300 hourly rate). *See, e.g., Dias v.*

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 AND 1441

*Burberry Ltd.*, No. 21-CV-192-MMA (JLB), 2021 WL 2349730, at *10 (S.D. Cal. June 9, 2021) (finding defendant's conservative estimate of 100 hours at $300/hr reasonable); *Avila v. Kiewit Corp.*, No. CV 19-5740-MWF-JPR, 2019 WL 4729641, at *6 (C.D. Cal. Sept. 26, 2019) (In an order denying a motion to remand, explaining "[a] number of courts have held that 100 hours and an hourly rate of $300 is an appropriate and conservative estimate for employment cases."); *Stainbrook v. Target Corp.*, 2016 WL 3248665, at *5 (applying same rate and hours).

### E. Punitive Damages

54.     Plaintiff also seeks punitive damages. (*See* Complaint, ¶¶ 44, 54, 64, 75, 86, 94, Prayer for Relief.) Again, an award of punitive damages could easily exceed the $75,000 threshold by itself. *Meija v. Parker Hannifin Corp*, CV 17-8477-MWF (RAOx), 2018 WL 582325, at *4 (C.D. Cal. Jan. 26, 2018).

55.     Other cases in this district have noted that punitive damages awards in Southern California often exceed the jurisdictional amount. *See Sawyer v. Retail Data, LLC*, No. CV 15-184-JVS (RNBx), 2015 WL 3929695, at *2 (C.D. Cal. Apr. 29, 2015) (holding amount in controversy requirement met partly because defendant "cite[d] to similar recent Orange County and Los Angeles County employment discrimination cases where plaintiffs were awarded from $50,000 to $7.5 million in punitive damages"); *Stainbrook v. Target Corp.*, 2016 WL 3248665, at *4 (accepting defendant's argument that punitive and emotional distress damages alone could exceed $75,000 because punitive damages are often calculated as a multiplier of compensatory damages); *Mitri v. Walgreen Co., Inc.*, No. 10CV00538(AMI), 2011 WL 7447636 (E.D. Cal. Nov. 15, 2011) (jury awarding $1.15 million in punitive damages in whistleblower suit similar to this one; see also  *Ko v. The Square Grp.*, 2014 WL 8108413 (Los Angeles Superior Ct., June 16, 2014) (a Los Angeles jury awarded the plaintiff $500,000 in punitive damages based on a wrongful termination claim); *Daoud v. Smith's Food & Drug Ctrs., Inc.*, No.

PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 AND 1441

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

BC124485, 1996 WL 526059 (Los Angeles Superior Ct., June 18, 1996) (awarding $75,000 for punitive damages in wrongful termination suit).

56.     Thus, here, if Plaintiff is able to prove his claims at trial, it is a near certainty that he will seek, and a jury could award, a verdict in excess of $75,000 solely in emotional distress damages *or* punitive damages.

## VII.   **REMOVAL IS TIMELY**

57.     This Petition and Notice of Removal is timely pursuant to 28 U.S.C. section 1446(b) because this action is being removed within thirty (30) days of service of the Summons and Complaint upon Walmart in which diversity of citizenship is apparent. 28 U.S.C. § 1446(b)(3).

## VIII.   **CONCLUSION**

58.     For the reasons stated above, this Court has jurisdiction under 28 U.S.C. §§ 1332 and 1441 because this is a civil action between citizens of different states, and the matters placed in controversy by Plaintiff exceed $75,000, exclusive of interest and costs.

59.     Accordingly, Walmart may remove the action to this Court pursuant to 28 U.S.C. §§ 1441. Thus, Walmart respectfully requests that this Court exercise its removal jurisdiction over this entire action under 28 U.S.C. §§ 1332, 1441, and 1446.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

DATED:  October 6, 2022            PAYNE & FEARS LLP


                                   By: ___/s/ *Megan A. Mackie*_____
                                          DANIEL F. FEARS
                                          ANDREW K. HAEFFELE
                                          MEGAN A. MACKIE

                                   Attorneys for Walmart Inc.

4890-4595-3334.6

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331 AND 1441